In theIn the
United States Court of Appeals
For the Seventh Circuit

No. 00-1808

United States of America,

Plaintiff-Appellee,

v.

Gabriel B. Folks,

Defendant-Appellant.

Appeal from the United States District Court
for the Central District of Illinois.
No. 99 CR 30055--Jeanne E. Scott, Judge.

Argued September 14, 2000--Decided January 5, 2001

Before Cudahy, Easterbrook, and Ripple, Circuit Judges.

Cudahy, Circuit Judge. Gabriel Folks was indicted for possession of a controlled substance with intent to distribute "[o]n or about May 6, 1999," in violation of 21 U.S.C. sec. 841(a)(1). Following a jury trial, Folks was convicted and sentenced to 30 years of imprisonment, to be followed by eight years of supervised release. Folks appeals, arguing that (1) evidence obtained during the search of his residence should have been suppressed; (2) certain jury instructions were not supported by the evidence; and (3) the prosecution constructively amended the indictment at trial. We affirm.

I.  BACKGROUND
1.

On May 5, 1999, two Springfield, Illinois, police officers investigated drug activity at 1424 East Brown Street in Springfield. As part of their investigation, the officers retrieved approximately 300 plastic sandwich bags from two trash cans located in the alleyway behind the residence. Several of these sandwich bags contained crack cocaine and marijuana residues, and 14 fingerprints on nine of these bags belonged to Folks.

On May 6, 1995, at approximately 12:40 a.m., police officers executed a search warrant at 1424 East Brown Street. When the police arrived at the home, no lights were visible on the inside. The officers approached the house, knocked on the front door and announced their presence. There was no response from within, and after approximately 10 seconds the officers forced open the front door. After quickly looking inside, the officers tossed a flash-bang device into the house./1 They then entered the house, finding Jonathon Norris in the living room, lying on a couch with a revolver by his side, and Folks in the back bedroom.

During their search of the residence, the officers found a jacket near the area where Norris was sleeping. Inside the jacket, the officers found a bag containing what they believed to be crack cocaine. Folks admitted to his ownership of the jacket, but not of the drugs. Upon searching Folks, the officers also found $520 and a small amount of marijuana. In the remainder of the house, the officers found a digital scale, several sandwich bags and a shoe box containing crack cocaine. Both the bags and the scale appeared to contain drug residue, and Folks' fingerprints were on both of them.

A one-count indictment charged Folks with possession of a controlled substance with intent to distribute "[o]n or about May 6, 1999," in violation of 21 U.S.C. sec. 841(a)(1).

2.

Folks centers his appeal around three aspects of his prosecution. First, Folks filed a motion to suppress the evidence seized during the search of 1424 East Brown Street, arguing that the use of a flash-bang device in executing the search was unreasonable. The trial court denied the motion to suppress, and the case proceeded to trial.

Second, at trial, witness testimony indicated that, no earlier than mid-March 1999, Folks participated in transporting crack cocaine from Chicago to Springfield, helped bag it in Springfield and then sold it from 1424 East Brown Street. Nonetheless, during the jury instruction conference, Folks objected to the constructive possession and aiding and abetting jury instructions, arguing that the evidence did not support them. Both of these instructions were given over Folks' objection.

Lastly, in its closing argument, the government asserted that there were two bases for Folks' guilt. First, the government argued that the

evidence showed Folks' guilt because his fingerprints were present on the bags and scale found inside the house, as well as on the bags found outside in the trash. Second, the government argued that, because Folks and Norris entered into a conspiracy to possess crack cocaine with intent to distribute it, Folks was guilty of any crime committed by Norris in furtherance of the conspiracy--mainly, possessing with intent to distribute the crack cocaine that Norris placed in Folks' jacket. Folks was convicted by the jury and sentenced to a 30-year term of imprisonment, to be followed by an eight-year term of supervised release.

II.  DISCUSSION

1.

We first address Folks' claim that evidence obtained during the search of 1424 East Brown Street should be suppressed because it was acquired in an unreasonable manner. The reasonableness of a search and seizure is analyzed under the Fourth Amendment to determine whether officers' actions were "objectively reasonable" under the circumstances confronting them. See Graham v. Connor, 490 U.S. 386, 397 (1989) (quoting Scott v. United States, 436 U.S. 128, 137-39 (1978)). We review de novo the district court's determination of reasonableness. See United States v. Husband, 226 F.3d 626, 629 (7th Cir. 2000).

Folks bases his argument entirely upon the alleged unreasonableness of using a flash-bang device during the raid of an unlit residence at night. However, at oral argument Folks recognized United States v. Jones, 214 F.3d 836 (7th Cir. 2000), which was decided only a few days after Folks filed his opening brief in this case, as "kind of a brick wall for our [suppression] argument." In Jones, we questioned the use of a flash-bang device in connection with the search of a residence, but nonetheless admitted evidence found during the search under the inevitable discovery doctrine. 214 F.3d at 838. That doctrine serves to admit evidence that, while perhaps questionably secured by the police, would nonetheless have been discovered if the search had been conducted more reasonably. See Murray v. United States, 487 U.S. 533, 539 (1988); Jones, 214 F.3d at 838. Folks is correct to recognize that the inevitable discovery doctrine applies here. The police would certainly have discovered the evidence during their search of 1424 East Brown Street even without the use of a flash-bang device--they did, after all, have a valid search warrant--and we need not discuss the merits of Folks' Fourth Amendment argument further.

We do, however, pause to note the potentially serious injuries that may arise from the use of a flash-bang device during a search. See, e.g., Kirk v. Watkins, No. 98-7052, 1999 WL 381119, at *2 (10th Cir. June 11, 1999) (unpublished) (flash-bang device landed on defendant's bed, exploded and burned defendant); Means v. United States, 176 F.3d 1376, 1378 (11th Cir. 1999) (flash-bang device burned plaintiff's leg, fractured small left toe and blew nail off toe). Even when use of a flash-bang device has not resulted in actual, physical harm, courts have in some circumstances justifiably questioned the device's use. See, e.g., Jones, 214 F.3d at 838 (The use of a flash-bang device "created a risk that people close to the detonation point would be injured."); United States v. Myers, 106 F.3d 936, 940 (10th Cir. 1997) ("The use of a 'flashbang' device in a house where innocent and unsuspecting children sleep gives us great pause.").

In spite of their serious reservations, none of these courts excluded evidence obtained as a result of the challenged searches. Even so, the government should be restrained in celebrating these outcomes: searches in which people are injured can, and occasionally do, result in tort or civil rights actions against the government. See, e.g., Means, 176 F.3d 1376; Henry v. Bd. of Leavenworth County, Comm'rs, 64 F.Supp.2d 1042 (D. Kan. 1999). In such actions, of course, inevitable discovery is not a defense. The government may thus risk significant damage claims from the careless deployment of flash-bang devices./2

2.

Folks next argues that two jury instructions-- involving constructive possession and aiding and abetting--were not supported by the evidence. Jury instructions are viewed as a whole and "[i]f the instructions are adequately supported by the record and are fair and accurate summaries of the law, the instructions will not be disturbed on appeal." United States v. Lanzotti, 205 F.3d 951, 956 (7th Cir. 2000).

a.  Constructive Possession

Constructive possession of a controlled substance is established by proving that "the defendant had the ability to exercise control over the narcotics, that is, the power to possess them." United States v. Molinaro, 877 F.2d 1341, 1348 (7th Cir. 1989). Under the doctrine of constructive possession, "a person can be convicted for possessing cocaine though he does not possess it in a literal sense." United States

v. Manzella, 791 F.2d 1263, 1266 (7th Cir. 1986); see also United States v. Garrett, 903 F.2d 1105, 1112 (7th Cir. 1990) (and cases cited therein). However, a constructive possession jury instruction must have evidentiary support. See United States v. James, 819 F.2d 674, 675-76 (6th Cir. 1987) (cited with approval in Bankcard Am., Inc. v. Universal Bancard Sys., Inc., 203 F.3d 477, 484-85 (7th Cir. 2000)).

Folks contends that because there was no evidence that he knew of either the drugs found in his jacket pocket or of those found in the shoe box,/3 he could not have constructively possessed either of the drug quantities found during the search. Folks forgets, however, that drugs other than those found in his jacket or in the shoe box were at issue during the trial--the police also found bags (both inside the house and outside, in the garbage) with drug residue and Folks' fingerprints on them, as well as a scale, also with drug residue and Folks' fingerprints on it. In addition, the following evidence was presented at trial: (1) Folks was either the lessee or the lessor of 1424 East Brown Street;/4 (2) Folks participated in transporting the crack cocaine to the residence; (3) Folks helped package the crack cocaine at the residence; and (4) Folks helped distribute the crack cocaine from the residence. All of this evidence clearly points to Folks' ability to exercise control over the crack cocaine found at or near 1424 East Brown Street. In light of the above, then, there was more than sufficient evidence to support giving the constructive possession instruction.

b.  Aiding and Abetting

Aiding and abetting is established by showing that the defendant had "knowledge of the illegal activity that is being aided and abetted, a desire to help the activity succeed and [participated in] some act of helping." United States v. Lanzotti, 205 F.3d 951, 956 (7th Cir. 2000). Under an aiding and abetting theory, "[p]articipation may be established by circumstantial evidence, and the evidence may be of relatively slight moment." United States v. Coleman, 179 F.3d 1056, 1061 (7th Cir. 1999) (quoting United States v. McKneely, 69 F.3d 1067, 1072 (10th Cir. 1995)).

Folks argues that the evidence adduced at trial did not support the giving of an aiding and abetting jury instruction, reiterating that he did not know of the drugs in his jacket or in the shoe box. Again, Folks' argument fails. As noted, the drugs found in Folks' jacket and in the shoe box were not the only evidence of Folks'

involvement with the drug trade at his residence. Folks' fingerprints were found on numerous sandwich bags that contained drug residue, as well as on a scale that contained drug residue. Further, testimony at trial indicated that Folks brought crack cocaine into the residence and, after helping to bag it, participated in selling it from the residence. This evidence is a sufficient indication of Folks' knowledge of the drug trade occurring at his residence, his desire to help that trade and his participation in an act of helping that trade. Accordingly, the district court properly gave the aiding and abetting jury instruction.

c.   Harmless Error

Even if these jury instructions had been given in error, the error would be harmless under the facts of this case. An incorrect jury instruction is harmless if a properly instructed jury would have reached the same verdict. See United States v. Thomas, 86 F.3d 647, 651 (7th Cir. 1996). In this case, Folks' fingerprints were found on several plastic sandwich bags and a scale, all of which were covered with drug residue. In addition, a trial witness testified to Folks' involvement with the drug distribution occurring at 1424 East Brown Street, indicating that Folks packaged and distributed crack cocaine inside the residence. This is abundant evidence to convict Folks of actually possessing a controlled substance with intent to distribute. As a result, a jury would have convicted Folks of possessing with intent to distribute a controlled substance regardless whether or not it had received the constructive possession or aiding and abetting instructions.

3.

Folks lastly argues that his indictment was constructively amended by the government's closing argument. At closing argument, the prosecutor declared that the presence of Folks' fingerprints on the plastic bags found in the trash cans behind 1424 East Brown Street, as well as the presence of Folks' fingerprints on the plastic bags and scale found inside of the residence, established that Folks had possessed crack cocaine with intent to distribute it.

Folks takes specific issue with the prosecutor's contention that the plastic bags found in the trash served as a potential basis for a guilty verdict, urging that this assertion constructively amended the indictment in violation of the Fifth Amendment to the Constitution. "A constructive amendment to an indictment occurs when either the government . .

. the court . . . or both, broadens the possible bases for conviction beyond those presented by the grand jury." United States v. Cusimano, 148 F.3d 824, 829 (7th Cir. 1998) (quoting United States v. Floresca, 38 F.3d 706, 710 (4th Cir. 1994)). Permitting an indictment to be constructively amended thus violates the Fifth Amendment, which states in pertinent part that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." See United States v. Willoughby, 27 F.3d 263, 266 (7th Cir. 1994). To avoid running afoul of the Fifth Amendment, the allegations in the indictment and the proof at trial must match in order "to insure that the defendant is not subject to a second prosecution, and to give the defendant reasonable notice so that he may prepare a defense." United States v. McKinney, 954 F.2d 471, 480 (7th Cir. 1992).

Because Folks failed to object contemporaneously to the prosecutor's statements, we review only for plain error. See Cusimano, 148 F.3d at 828. In order for Folks to prevail under the plain error standard, he must show: (1) that there was error; (2) that the error was plain; (3) that the error affected his substantial rights; and (4) that the error seriously affected the fairness, integrity or public reputation of judicial proceedings. See Johnson v. United States, 520 U.S. 461, 466-67 (1997); United States v. Remsza, 77 F.3d 1039, 1044 (7th Cir. 1996). Under the plain error standard, a constructive amendment "must constitute 'a mistake so serious that but for it the [defendant] probably would have been acquitted' in order for us to reverse." Remsza, 77 F.3d at 1044 (7th Cir. 1996) (quoting United States v. Gunning, 984 F.2d 1476, 1482 (7th Cir. 1993)).

Folks urges that the prosecutor's reference to the bags found in the trash constructively amended the indictment because: (1) the statement impermissibly broadened the dates of his alleged conduct beyond the "[o]n or about May 6, 1999" period alleged in the indictment and (2) the statement impermissibly broadened the conduct he is liable for beyond the possession with intent to distribute the crack cocaine found during the search of the house. First, we address the contention that the prosecution constructively amended the indictment to include conduct outside of the period described as "[o]n or about May 6, 1999." A reasonable change in the date specified in an indictment does not, in general, impermissibly amend the indictment. See United States v. Leichtnam, 948 F.2d 370, 376 (7th Cir. 1991). In fact:

Where the indictment alleges that an offense allegedly occurred "on or about" a certain date, the defendant is deemed to be on notice that the charge is not limited to a specific date. He therefore cannot make the requisite showing of prejudice based simply on the fact that the government has failed to prove a specific date. . . . The courts agree that when the indictment uses the "on or about" designation, proof of a date reasonably near to the specified date is sufficient. . . .

United States v. Leibowitz, 857 F.2d 373, 379 (7th Cir. 1988) (citations omitted). Indeed, "[u]nless the particular date is an element of the alleged offense, it is generally sufficient to prove that the offense was committed on any day before the indictment and within the statute of limitations." Id. at 378.

21 U.S.C. sec. 841 does not make the date of the charged conduct an element of the crime of possession with intent to distribute. It is therefore sufficient to show that the conduct occurred prior to the date alleged in the indictment, but not so far in the past as to fall outside of the five-year statute of limitations provided by 18 U.S.C. sec. 3282. Testimony at trial indicated that Folks began packaging and selling drugs at 1424 East Brown Street in mid-March or April 1999, at most two months before the date alleged in the indictment. The bags found in the trash were thus surely produced no earlier than mid-March 1999 and were thus used to package crack cocaine before the date alleged in the indictment, but well within the statute of limitations.

Folks next argues that the indictment was impermissibly amended not only by a change in the date of occurrence itself, but also by a change in the identity of the drugs on which the government relied to convict him. Folks bases this identity argument on a deduction from the date, "[o]n or about May 6, 1999." Because that is the date upon which Folks' residence was searched, Folks construes the indictment as charging him only with possession of drugs found inside the searched residence.

Folks' reading of the indictment might well be correct if it charged him specifically only with the possession of the drugs found inside his residence at the time of the search. But such specificity is not found in the indictment. Instead, the single count charges, in relevant part, that "[o]n or about May 6, 1999 . . . the defendant, GABRIEL B. FOLKS, knowingly and intentionally possessed a controlled substance, namely a mixture or substance containing cocaine

base ('crack') . . . with the intent to distribute it." The indictment thus broadly charges one offense. When an indictment is so broadly worded, "[t]he government's presentation of multiple factual scenarios to prove that offense does not render the count duplicitous . . . ." United States v. Washington, 127 F.3d 510, 513 (6th Cir. 1997) (government offered proof of two separate drug transactions to establish defendant's guilt under one count of indictment); see also United States v. Klat, 156 F.3d 1258, 1266 (D.C. Cir. 1998) (numerous allegedly threatening acts against two Supreme Court Justices, in violation of 18 U.S.C. sec.sec. 115 and 1114, may be charged in a single count if acts represent part of single, continuing scheme). Because Folks' one-count indictment is not duplicitous, but instead alleges only one offense that may be proved by varied fact patterns, the presentation during closing argument of several factual scenarios to establish guilt does not constructively amend the indictment. The government may thus argue Folks' guilt based not only upon the crack cocaine found in Folks' residence, but also upon the bags found in the trash.

Further, we note that none of the concerns raised by alleged constructive amendments--namely, impairment of the ability of a defendant to prepare a defense and the possibility of double jeopardy--are in play in this case. First, Folks was aware of the government's attempt to establish his guilt through the bags found in the trash. Folks defended against this showing throughout his trial, responding to the theory in his opening and closing statements, as well as by cross-examination of government witnesses. There is thus every indication that Folks adequately defended himself against this aspect of the government's case. Second, there is no possibility that Folks will be subject to a second prosecution for the possession of crack cocaine with intent to distribute in the spring of 1999; the indictment is simply too broadly worded to allow for such an outcome. Accordingly, for all these reasons, there was no impermissible amendment to Folks' indictment.

III.  CONCLUSION

For the foregoing reasons, the conviction and sentence in this case are

Affirmed.

/1 At trial, a government witness described a flash-bang device as "a large firecracker inside a metal housing." The device is commonly used to distract occupants of a house as police enter to execute a search warrant.

/2 However, it appears that the government was sufficiently careful in this case. The police quickly looked into the residence before tossing the flash-bang device to make sure no one would be injured by the device's use, and the police carried a fire extinguisher to quickly extinguish any fires resulting from deployment of the device. Further, use of the device was justified by the officers' belief that gang members inhabited 1424 East Brown Street. The fact that Norris was found sleeping with a gun by his side when the police entered the residence validated police suspicions that potentially violent people could be found in the house.

/3 At trial, the government disclaimed any allegation that Folks knew of the crack cocaine found in the shoe box. As a result, we do not consider this hoard of crack cocaine in assessing the evidence against Folks.

/4 A lease dated May 5, 1999 was fastened to the wall in one of the rooms at 1424 East Brown Street. The front page of the lease designated Folks as the lessor of the residence and Rodriguez Jones as the lessee. Confusingly, the back side of the lease apparently indicated the opposite--that Folks was the lessee and Jones the lessor.