# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-2017

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

DARRYL MORRIS,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Central District of Illinois.
No. 01-CR-30101—**Jeanne E. Scott**, *Judge.*

———————

ARGUED OCTOBER 29, 2003—DECIDED NOVEMBER 19, 2003

———————

Before FLAUM, *Chief Judge*, and EASTERBROOK and KANNE, *Circuit Judges.*

FLAUM, *Chief Judge.* Darryl Morris was convicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) and was sentenced to fifty-seven months imprisonment and three years of supervised release. He now appeals his conviction, arguing that the district court erred by refusing to suppress certain evidence against him. Morris further asserts that even if the evidence was properly admitted, it was insufficient to support the jury's guilty verdict. Morris also appeals his sentence, claiming that the district court improperly enhanced his offense level pursuant to U.S. Sentencing Guidelines Manual § 2K2.1(b)(5). For the reasons stated herein, we affirm.

## I. BACKGROUND

On January 8, 2001, a search warrant was issued for the residence located at 1225 East Ash Street in Springfield, Illinois. The warrant was based upon two informants' tips that drugs were being sold from the residence. The informants' tips were corroborated by evidence removed from trash cans outside of the residence. Specifically, the trash cans contained a .22-caliber round of ammunition and numerous plastic bags containing residue that tested positive for cocaine and cannabis.

The next day, ten Springfield police officers arrived at the residence to execute the search warrant. The officers wore ballistic vests, protective masks, gloves, helmets and goggles, and one officer carried a ballistics shield. The officers also carried a fire extinguisher. After knocking on the front door and announcing, "Springfield Police, search warrant," the officers opened the door with a battering ram. As the door opened, an officer saw a man run from the front room and out of view. Another officer checked the front room to ensure it was unoccupied and then dropped a "flash-bang" device inside of the doorway. Approximately two to five seconds later the device detonated, causing a loud bang and a flash of bright light.

After the device detonated, officers entered the residence. In one bedroom they found the defendant's brother who rented the residence, a female and an infant. The officers secured these individuals and proceeded to search the rest of the house. When they reached an open stairway that led to a dark basement, the officers heard voices below. The officers asked if there were children in the basement, and a voice said that there were no children present. Officers looked to the bottom of the stairs to ensure that no one was in the area, and then dropped a second flash-bang device into the stairwell. Once the device detonated, officers entered the basement and secured four adult males, one of whom was the defendant, Darryl Morris.

Next, the officers searched the house for evidence of contraband. In a bedroom closet, officers noticed that a ceiling panel was slightly displaced. When they reached overhead, the officers found a .22-caliber Thompson handgun and 126 rounds of ammunition. In another ceiling alcove officers found a .357 Sig Saur semi-automatic pistol with three loaded magazines. In the basement officers found a .44 magnum barrel that fit the Thompson handgun, 2.9 grams of marijuana, less than a gram of cocaine, bags with marijuana and cocaine residue, bags with corners cut off, a gram weight scale, and a marijuana grow book.

Throughout the course of the investigation, Morris made numerous inculpatory statements regarding the contraband items. At the beginning of an interview with the police at the scene of the search, Morris told an officer that he lived at the residence. After the guns were found, Morris told the same officer that he had purchased the Thompson handgun for one hundred dollars and was storing the Sig Saur for someone else. Five hours after the search of the residence, Morris told two detectives that the guns were his. One detective wrote out Morris's statement, and Morris signed the statement. This statement included admissions that Morris did not have a job for three years, but "smoke[s] weed and sometimes get[s] enough to make a little money to pay for rent." Morris further admitted that he kept the Thompson handgun for protection. More than six months later when Morris was arrested by Agents from the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), Morris again stated that he never fired the guns and that it was better for him to have possession of them than someone who would shoot people with them.

At trial, the government introduced the firearms and ammunition into evidence. The government also elicited expert testimony that Morris's palm print was found on the .22-caliber handgun. Testimony regarding Morris's various inculpatory statements was given by the officer who

executed the search, a detective who interrogated Morris at the police station, and the ATF agent who arrested Morris more than six months later. Morris testified on his own behalf and denied that he made any of the inculpatory statements or ever possessed the guns. The jury found Morris guilty of being a felon in possession of a firearm on December 10, 2002.

## II. ANALYSIS

### A. *Motion to Suppress*

Morris argues that the use of the second flash-bang device was unreasonable and that his inculpatory statements and the two guns should have been suppressed as fruits of a Fourth Amendment violation. When reviewing a district court's denial of a motion to suppress, legal conclusions are reviewed *de novo* and factual findings are reviewed for clear error. *See Ornelas v. United States*, 517 U.S. 690, 699 (1996). Using these standards, we find that the district court properly denied Morris's motion to suppress.

This Court has often emphasized the dangerous nature of flash-bang devices and has cautioned that the use of such devices in close proximity to suspects may not be reasonable. *See, e.g.*, *United States v. Jones*, 214 F.3d 836, 837 (7th Cir. 2000) (stating that the "police cannot automatically throw bombs into drug dealers' houses, even if the bomb goes by the euphemism 'flash-bang device' "); *United States v. Folks*, 236 F.3d 384, 388 (7th Cir. 2001) (pausing and listing cases "to note the potentially serious injuries that may arise from the use of a flash-bang device during a search"). However, this Court has also held that exclusion of evidence under the Fourth Amendment requires more than unreasonable police behavior: "the exclusionary rule

depends on causation."[1] *Jones*, 214 F.3d at 838. In this case the evidence against Morris was properly admitted because Morris cannot show that the use of the flash-bang device caused the discovery of the guns or his inculpatory statements.

Rather, this case is governed by the inevitable discovery doctrine. The inevitable discovery doctrine states that evidence that may have been questionably secured by the police need not be suppressed if it would have been discovered if the search was conducted more reasonably. *See Folks*, 236 F.3d at 388. As we stated in *Jones*, where a "warrant authorized the entry . . . seizure of evidence was inevitable." *Jones*, 214 F.3d at 838. The two guns in this case, both found on the main floor of the house, would certainly have been found without the use of the flash-bang device in the basement. In other words, it is the fact that the officers searched pursuant to a valid warrant which led to the discovery of the guns, not the use of the flash-bang device.

The same reasoning applies to Morris's inculpatory statements. If a defendant is under lawful arrest and his

---

[1] It is not clear in this case that the police even were unreasonable in their use of the flash-bang device. The police had reason to believe that the inhabitants of the residence were dangerous after finding live ammunition in the trash. When they arrived at the house they discovered that several suspects were in a dark basement with an open stairwell that the officers would have to travel down in order to secure the suspects. Before using the device, the officers inquired whether children were present. They next inspected the area where the device was to be thrown to ensure that no one was within the stairwell. Furthermore, the officers carried a fire extinguisher to eliminate any fires that may have resulted. The officers' actions therefore do appear to be reasonable, but we do not need to decide the issue because Morris's claim cannot prevail even assuming that the police acted unreasonably.

inculpatory statements are not involuntary or caused by the unreasonable search, the statements should not be suppressed. *See Jones*, 214 F.3d at 838. In *Jones*, this Court refused to suppress inculpatory statements made thirty minutes after the use of a flash-bang device because "intervening events demonstrate[d] that the illegality did not cause the confession." *Id.* Morris argues that this case is distinguishable from *Jones* because Morris's statements were involuntarily made when the flash-bang device caused him to fear for his safety.

We disagree. Other than Morris's allegation that he confessed because of the flash-bang device, there is no evidence to support the conclusion that the device caused Morris's statements to be involuntary. One officer testified that Morris's statements at the house were made in a "chatty" manner and were freely given. He further testified that there was nothing about Morris's manner or speech that suggested he was confused or disoriented. The voluntariness of the statements is also confirmed by the frequency of Morris's confessions—he confessed a total of four times to five separate law enforcement officers and as late as six months after the flash-bang device was used. Moreover, Morris's current allegations are inherently incredible as he testified at trial that he never made the inculpatory statements at all. Therefore, there is no evidence that Morris's statements were involuntary or linked to the use of the flash-bang device and the district court properly denied Morris's motion to suppress.

## B.  Sufficiency of the Evidence

Morris next argues that even with the admission of the inculpatory statements and guns, the government's case was insufficient to prove Morris's guilt beyond a reasonable doubt. In reviewing a case for sufficiency of the evidence we view the evidence in the light most favorable to the govern-

ment and uphold the verdict if a rational trier of fact could have found the existence of each element of the crime beyond a reasonable doubt. *See United States v. Kitchen*, 57 F.3d 516, 520 (7th Cir. 1995). The crime of being a felon in possession of a firearm has three elements: (1) the defendant has a previous felony conviction; (2) the defendant possessed a firearm; and (3) the firearm traveled in or affected interstate commerce. *Id.* In this case, Morris concedes that the government presented sufficient evidence that Morris was previously convicted of a felony and that the guns found in the residence traveled in or affected interstate commerce. Morris argues solely that the government did not prove that he possessed a firearm.

As we have stated many times, possession "may be either actual or constructive and it need not be exclusive but may be joint . . . Actual possession exists when a tangible object is in the immediate possession or control of the party. Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object." *United States v. Garrett*, 903 F.2d 1105, 1110 (7th Cir. 1990). Actual and constructive possession may be proved by either direct or circumstantial evidence. *See id.*

In this case, two firearms were found in the same house in which Morris was located. The house was rented by Morris's brother. Morris confessed that he possessed these firearms to at least four different law enforcement officers, and provided a detailed written description of how he obtained the weapons, who he obtained the weapons from, and why he was in possession of the weapons. Furthermore, Morris's palm print was found on one of the weapons.

This case is very similar to *United States v. Wilson*, 922 F.2d 1336, 1339 (7th Cir. 1991), where we held that the jury

had sufficient evidence to convict the defendant for being a felon in possession of a firearm where a gun found at the defendant's girlfriend's apartment had the defendant's fingerprint on it. Although there was no direct evidence to establish that the gun belonged to the defendant and no witnesses testified that they had seen him with the gun, this Court still found that a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.* at 1338.

The major factor that distinguishes this case from *Wilson* is that in this case the defendant also confessed several times to being in possession of the weapons. That clearly lends even more support to the jury's verdict. We therefore hold that a rational jury could have found Morris guilty beyond a reasonable doubt.

## C. Sentencing Enhancement

Morris's last argument is that the district court erred by enhancing his sentence by four offense levels for possessing a firearm in connection with the sale of marijuana. United States Sentencing Guideline § 2K2.1(b)(5) provides for a four-level enhancement if the government proves by a preponderance of the evidence that the defendant possessed a firearm in connection with another felony offense. We review the district court's decision to apply this sentencing enhancement for clear error, and we will reverse the district court only if "after considering all of the evidence, [we are] left with the definite and firm conviction that a mistake has been committed." *United States v. Wyatt*, 102 F.3d 241, 246 (7th Cir. 1996).

Here, Morris signed a statement admitting that he smokes marijuana and sometimes obtains enough marijuana "to make a little money to pay for rent and still have enough to get high myself." He further admitted that his

last legitimate job was three years before his arrest. In the same statement Morris acknowledged that he keeps the .22-caliber handgun for protection and has had it with him numerous times. Morris was arrested in the basement of his brother's house, where the police found 2.9 grams of marijuana, bags with trace amounts of marijuana, and a marijuana grow book. The day before Morris was arrested the police found several more bags with trace amounts of marijuana in the trash outside of the residence. Given this evidence, the district court could have found that Morris sold marijuana using his gun for protection.

We have previously held that possessing a firearm for protection while selling drugs is using a firearm is used "in connection with" a felony within the meaning of § 2K2.1(b)(5). *See United States v. Haynes*, 179 F.3d 1045, 1047 (7th Cir. 1999). Moreover, the sale of marijuana is a felony offense. *See* 21 U.S.C. 841(b)(1)(d). The district court therefore could have found by a preponderance of the evidence that § 2K2.1(b)(5) should be applied.

Morris contends that the district court should not have relied upon his inculpatory statements because his words were uncorroborated and later denied by Morris himself. While it gives us pause that there is no direct evidence showing that Morris personally was engaged in drug sales, we cannot say that it was clearly erroneous for the judge to conclude that Morris's inculpatory statements should be credited. Many defendants do not tell the truth while undergoing criminal prosecutions. It is not clear error for the district court to believe the defendant's inculpatory statements while disbelieving the defendant's self-serving statements. This is especially true considering that in this case, the physical evidence—the marijuana, bags with traces of marijuana, marijuana grow book, and gun with Morris's palm print on it—were consistent with Morris's confession. Therefore, it was certainly a permissible inference that Morris was engaged in selling marijuana and used his guns

in connection with that felony. Because "a district court's choice between two permissible inferences from the evidence cannot be clearly erroneous," *United States v. Wyatt*, 102 F.3d 241, 246 (7th Cir. 1996), we affirm Morris's sentence.

### III. CONCLUSION

For these reasons, we AFFIRM Morris's conviction and sentencing enhancement.

A true Copy:

Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*