MANION, Circuit Judge,
concurring in the judgment in part and dissenting in part.
What started out as a seemingly routine response to Rudy Escobedo’s 911 call threatening his own suicide descended into an unfortunate and certainly disturbing result. In hindsight, at least, the response to his threat likely should not have gone much beyond the telephone negotiations initiated by Sergeant Taylor and continued by Officer Ebetino. However, communications eventually broke down and what appears to have been an unnecessary assault *787 with the tear gas and flash-bang devices[1] ensued.
Although I question whether the cases cited by the court clearly established that the officers’ use of tear gas violated the Fourth Amendment, I do believe that reasonable officials would have known that using twelve times the incapacitating quantity of tear gas to extricate a person at home alone who had only threatened to harm himself and was not suspected of committing a crime “was unconstitutional without guidance from courts.” Gossmeyer v. McDonald, 128 F.3d 481, 496 (7th Cir.1997). For that reason, I concur with the court’s conclusion that the defendants’ use of tear gas was not protected by qualified immunity.
I disagree, however, with the court’s conclusion that the defendants are not entitled to qualified immunity for their use of the flash-bang devices. The majority opinion holds that on the date of the incident it was clearly established that the defendants’ employment of the flash-bang devices was an excessive use of force. In reaching its conclusion, the court relies upon six cases that involved the use of such devices by law enforcement. But as explained below, those cases neither separately nor collectively clearly established that the defendants’ conduct was unconstitutional. And because the defendants’ use of the flash-bang devices — unlike their use of the tear gas — was not obviously in violation of the decedent’s constitutional rights, they are entitled to qualified immunity on this issue.
The first of the four cases from this circuit cited in the majority opinion is Molina v. Cooper, 325 F.3d 963 (7th Cir.2003)—an excessive force case. There, while executing a search warrant, police used flash-bang devices in entering a basement because they believed a suspect with a criminal record that included an aggravated assault was at home and had access to weapons. Id. at 973. The officers believed that no one other than Molina was in the house and “had ample reason to be concerned about their personal safety.” Id. Although we were careful to not suggest “that the use of flash bang devices is appropriate in every case (or even most cases),” we held that the use of the devices “was reasonable under the circumstances” and did not constitute excessive force. Id.
Molina is the most relevant case for the issue confronting us because it is from this circuit, it is an excessive force case involving flash-bang devices, and the discussion of the propriety of using such devices was not dicta. Unfortunately, the court substantially discounts the case by saying that Molina “expressly limited [its] holding to the circumstances presented.” Ante, at -. But nearly all excessive force cases are fact-specific and context-dependent, Scott v. Edinburg, 346 F.3d 752, 756 (7th Cir.2003), and that does not limit the relevance of such cases in qualified immunity analyses. Molina speaks for itself: where police are executing a search warrant and believe that a person with a record of aggravated assault is at home alone with access to weapons, the use of flash-bang devices is appropriate. 325 F.3d at 973. Here, as in Molina, no one else was present in the dwelling where the police used flash-bang devices to incapacitate a person who possessed a weapon. But this case is not on all fours with Molina, mainly because Escobedo had no history of aggravated assault and the defendants were not executing a search warrant. Nevertheless, Molina’s relevance to the qualified immunity analysis here is significant and should *788 be recognized as the leading authority in this circuit.
The court should not simply confine Molina to its facts and then derive “detailed guidance” from what it calls “ ‘lucid and unambiguous’ dicta” in three evidence suppression cases from this circuit. Ante at -. In those three cases, the statements that were critical of the police’s use of flash-bang devices were dicta — as the majority opinion rightly recognizes. Although we have stated that in limited circumstances dicta can clearly establish the existence of a constitutional right, the dicta must be “lucid and unambiguous,” as when a court observes that certain conduct violates a constitutional right but ultimately holds that the right was not clearly established. Hanes v. Zurick, 578 F.3d 491, 496 (7th Cir.2009). The dicta in those three cases does not come close to meeting that high standard: in none of them did we conclude that the use of flash-bang devices constituted excessive force.
In United States v. Jones, 214 F.3d 836 (7th Cir.2000), the defendant appealed the denial of his motion to suppress evidence that was obtained by police during a no-knock entry into his dwelling using a battering ram and a flash-bang device. We chastised the police’s use of the flash-bang device because (unlike here) an innocent adult and child were inside the apartment. Id. at 838. The district court had held that the officers’ conduct was reasonable in all respects; we said we were “less certain,” although we did not say that the district court was wrong. Id. at 837. We also stated that “police cannot automatically ” employ flash-bang devices just because they are entering the house of a drug dealer. Id. (emphasis added). That proposition is unremarkable and in fact implies that such devices are appropriate in some situations. In addition, we noted that were the action one for personal injury it “would be a serious one”; but Jones was not a personal injury action, “so whether one would succeed is not something we need[ed to] decide.” Id. at 838.
In United States v. Folks, 236 F.3d 384 (7th Cir.2001), a suppression case similar to Jones, the defendant appealed the denial of his motion to suppress evidence from a dwelling search where the police used a flash-bang device in an unlit residence at night. After quickly looking inside, the officers deployed the device, and when they entered they encountered an armed man and the defendant. Id. at 387. The court determined that the evidence was admissible under the inevitable discovery doctrine but acknowledged the serious damage flash-bang devices can cause, observing that “[t]he government may thus risk significant claims from the careless deployment of flash-bang devices.” Id. at 388. But focusing on the specific facts of the case, the court concluded that the police’s use of a flash-bang device was sufficiently careful because the officers had looked into the residence before tossing the devices and had carried a fire extinguisher to put out any resulting fires. Id. at n. 2. The use of the device was justified, we thought, because the police’s suspicions that potentially violent people might be at home were confirmed. Id. We did not suggest, however, that not using the same cautious measures would necessarily be an excessive use of force. Yet here, the court lists the sufficient precautionary actions the police took in Folks and treats them as if they are necessary measures for the proper use of flash-bang devices.[2] Ante, *789 at-,---.
And in United States v. Morris, 349 F.3d 1009 (7th Cir.2003), the defendant attempted to suppress weapons found during a search of his residence and his inculpatory statements because the police had unreasonably used flash-bang devices to facilitate the search. In Morris, we cited Jones and Folks for the manifest proposition that flash-bang devices are dangerous. Id. at 1012. But we also stated that the police’s use of the devices in that case appeared to be reasonable because of the dangerous individuals involved, the dangerous entry point for police, and the precautionary measures the officers took: asking whether children were present, inspecting the area where the devices were to be employed, and carrying a fire extinguisher. Id. at 1013 n. 1. We did not suggest, however, that the use of flash-bang devices under different and possibly less dangerous circumstances and with fewer precautions taken by police would necessarily be unreasonable. Still, the court treats police measures that were sufficient to approve employment of the flash-bang devices in Moms as required measures here when it reads Morris as suggesting that “the use of a flash bang grenade is reasonable only when there is a dangerous suspect and a dangerous entry point for the police, when the police have checked to see if innocent individuals are around before deploying the device, when the police have visually inspected the area where the device will be used and when the police carry a fire extinguisher.”[3] Ante at-(emphasis added).
The court also cites two cases from outside this circuit. In Estate of Smith v. Marasco, 318 F.3d 497, 517 (3d Cir.2003) (Marasco I), the Third Circuit concluded that the district court erred in granting summary judgment for the officers on the plaintiffs’ excessive force claim because the plaintiffs had “proffered evidence sufficient to require that the question of the reasonableness of the [officers’] tactics be submitted to a jury.” Marasco I was not a qualified immunity case, and the court merely held that a jury question existed on whether the facts established excessive force. Id. at 518. Indeed, it “recognize[d] that a jury could conclude” that the force used “was a reasonable response to the threat the officers perceived.” Id. at 517. Marasco I thus provides little (if any) guidance here: a holding that a particular employment of flash-bang devices could (or could not) be an excessive use of force does not clearly establish anything.
The only case cited by the court that actually held that a particular use of flash-bang devices was an excessive application of force is Boyd v. Benton County, 374 F.3d 773 (9th Cir.2004). There, the Ninth Circuit concluded that throwing a flash-bang device blindly into a room occupied by up to eight innocent bystanders and criminal suspects was unconstitutionally excessive force. Id. at 779. Hence, in the Ninth Circuit it appears to be clearly established that when pursuing armed suspects, the police cannot blindly toss a flash-bang device into a room occupied by up to eight people who were unconnected to the crime under investigation. Here, however, in sharp and material contrast to Boyd, there were no innocent bystanders present but only an armed, suicidal individual who was high on cocaine. And the defendants’ failure to look into Escobedo’s bedroom before they deployed the flash- *790 bang device is not surprising: he had barricaded the door. Moreover, in this circuit Molina demonstrates that it is not unreasonable for police to use flash-bang devices when they believe that the only occupant in a dwelling is armed and thus they have “ample reason to be concerned about their personal safety.” 325 F.3d at 973. Molina—not Boyd — is the controlling precedent, and it supplied a sound basis for the defendants’ use of the flash-bang devices. Perhaps the only thing clear here is that the cases the court relies upon did not give the defendants notice and it was not clearly established that their conduct was unlawful. In my view, and in the words of the Supreme Court,
[t]hese ... cases taken together undoubtedly show that this area is one in which the result depends very much on the facts of each case. None of them squarely governs the case here; they do suggest that [the officers’] actions fell in the “hazy border between excessive and acceptable force.” The cases by no means “clearly establish” that [their] conduct violated the Fourth Amendment.
Brosseau v. Haugen, 543 U.S. 194, 201, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam) (citation omitted).
This case is obviously not over. The question remains whether it was reasonable for the police to go to this extent in effect to rescue a man who was threatening suicide. I assume the building had been cleared of other occupants (given the extensive tear gas use, anyone remaining would have likely exited on their own accord). Once communications broke down and the SWAT team arrived, the officers in charge thought it was necessary to employ these extreme resources when the only apparent threat was that of Escobedo to himself. Once the place was saturated with tear gas and the four officers were ordered to enter the apartment, a new scenario involving the use of flash-bang devices emerged. In order to determine what is reasonable under these circumstances, the conditions that existed when the four officers reached the apartment door have to be isolated and separated from the original decision to deploy the SWAT team and to use what was obviously an excessive amount of tear gas. In other words, regardless of whether the initial assault and tear gas saturation was reasonable, at this point the four officers were ordered to force their way in. When they reached the door of the apartment, they were wearing gas masks because of the tear gas saturation. Unfortunately, this necessity limited their vision and their hearing. They knew Escobedo was high on drugs, was in possession of a gun, and had refused to come out. Clearly this presented a dangerous entry point for the officers, which may have justified employment of the flash-bang devices. When they reached the bedroom door that was substantially blocked, other than to retreat, the flash-bang devices may have been their safest option.
In conclusion, the law at the time of the incident did not clearly establish that the defendants’ employment of flash-bang devices was an unconstitutional application of force, nor was their use of such devices patently violative of Escobedo’s Fourth Amendment rights. Therefore, I would reverse the district court’s contrary decision and conclude that the defendants are entitled to qualified immunity for their employment of the flash-bang devices.

. Commonly used by law enforcement, flash-bang devices are non-lethal distraction tools that "generate a loud explosion and a brilliant flash that disorient suspects.” See “police:: explosives,” http://www.search.eb.com/eb/ article-260942 (last visited January 29, 2010).

. The court also suggests that Folks is unlike this case because there were potentially violent people present there. Ante, at -■- -,-. In doing so, the court appears to define violent persons as only those who pose a threat to police or others. A person who is high on cocaine, has a gun, and is threatening to kill himself is certainly a potentially violent individual. Police cannot be expected to assume that when they encounter such a per *789 son, he poses no threat of violence to them merely because he has not previously expressly threatened them or others.

. The court does not mention the similarities between this case and Morris: as discussed below, the officers were faced with a dangerous entry point and believed they could be encountering a dangerous person.