NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 14, 2010
Decided March 21, 2011

*Before*

RICHARD A. POSNER, *Circuit Judge*

KENNETH F. RIPPLE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 10-1638

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District Court for the Northern District of Illinois |
| *Plaintiff-Appellee*, | Eastern Division. |
| *v.* | No. 08 CR 1016 - 1 |
| GLENN D. SMITH | David H. Coar, |
| *Defendant-Appellant*. | *Judge.* |

## O R D E R

Glenn Smith appeals his conviction for possessing a firearm as a convicted felon and his 120-month prison sentence for distributing more than five grams of crack cocaine. He argues that the evidence of his constructive possession of a shotgun was insufficient to support the firearm conviction and that his sentence for the drug charge violates the Fair Sentencing Act and the Eighth Amendment. We affirm.

A confidential informant who was wearing a wire while working with the Bureau of Alcohol, Tobacco, Firearms and Explosives bought 10.9 grams of crack cocaine from Mr.

Smith.  He asked Mr. Smith for a gun,[1] and Mr. Smith replied that the informant would have to go to Mr. Smith's "crib," where Mr. Smith's "girl" would give him one. Mr. Smith then gave the informant his address and telephoned someone he said was his girlfriend, saying to her that the informant would swing by to grab the "gun in the closet . . . [i]n the pillow case." Mr. Smith told the informant that the gun was a Mossberg, and that the informant could borrow it until Mr. Smith provided him with a .38 caliber handgun instead. The informant paid Mr. Smith $500 before Mr. Smith drove away. ATF agents promptly arrested him.

Meanwhile, the informant, still wearing a wire, went to the address Mr. Smith provided, where he spoke with a woman who gave him a loaded Mossberg shotgun that was hidden inside a pillow. When the informant first arrived, the woman asked where "he" was, but did not specify to whom she was referring. Before leaving, the informant asked the woman if she wanted him to return the pillow, but she declined, saying, "that's what [unintelligible] put it in."

A grand jury indicted Mr. Smith for distributing more than 5 grams of crack cocaine, 21 U.S.C. § 841(a)(1), and being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1). After a two-day trial, during which the government introduced the recordings of the informant's conversations with Mr. Smith and the woman who provided the shotgun, the jury convicted Mr. Smith on both counts. The district court calculated Mr. Smith's guidelines sentencing range for both counts to be 110-137 months because the crimes were grouped and thus shared the gun charge's total offense level of 26, the higher of the two. *See* U.S.S.G. § 3D1.4. The court sentenced Mr. Smith to 120 months' imprisonment for the drug charge, which was the statutory minimum because he had a prior felony drug conviction, 21 U.S.C. § 841(b)(1)(B)(iii), and 110 months' imprisonment for the gun charge, to be served concurrently. The judge stated that, if not for the mandatory minimum, he would have imposed a lesser sentence for the drug charge to offset the disparity between penalties for crack and powder cocaine. Mr. Smith moved for a post-trial judgment of acquittal arguing several issues, none of which is renewed here. The district court denied the motion.

---

[1] The transcripts of the recording state that the informant asked Mr. Smith about getting a "gap," which, the government suggests, may have actually been the word "gat," a common slang word for a gun. But the word "gap" may refer to the Glock Automatic Pistol ("GAP"), and is also a slang word for any type of firearm. *See, e.g.*, *People v. McGee*, No. B159037, 2003 WL 21995446 at *4 n.4 (Cal. Ct. App. Aug. 22, 2003) (quoting a prosecutor's closing argument explaining the slang term "heated" means, "I got a gap. I got a gun.")

On appeal Mr. Smith first argues that his firearm conviction should be reversed because the evidence showed only that the woman, and not he, possessed the shotgun. But constructive possession satisfies the possession element of § 922(g)(1), *United States v. Harris*, 587 F.3d 861, 866 (7th Cir. 2009); *United States v. Morris*, 576 F.3d 661, 666 (7th Cir. 2009), *cert denied* 130 S. Ct. 1313 (2010), and the government presented evidence sufficient to support Mr. Smith's constructive possession of the Mossberg. "A defendant constructively possesses an item if he has the power and the intent to exercise dominion or control over the object, either directly or through others." *United States v. Hampton*, 585 F.3d 1033, 1040-41 (7th Cir. 2009). Here, Mr. Smith placed a phone call instructing someone to give the informant a gun that was hidden in a pillowcase. He then directed the informant to a residence where, he said, his girlfriend would give the informant a Mossberg shotgun. As promised, the informant received a Mossberg shotgun in a pillowcase from a woman at the address Mr. Smith provided. This circumstantial evidence was ample to support the jury's conclusion that Mr. Smith exercised control over, and thus constructively possessed, the shotgun. *See United States v. Morris*, 349 F.3d 1009, 1014 (7th Cir. 2003).

Next, Mr. Smith argues that his 120-month mandatory minimum sentence for crack distribution was unlawful under the Fair Sentencing Act, which Congress passed after he was sentenced. *Compare* 21 U.S.C. § 841(b)(1)(B)(iii) (2008) *with* 21 U.S.C. § 841(b)(1)(B)(iii) (2010). If Mr. Smith were sentenced today, he would not be subject to the mandatory minimum sentencing provision because his offense involved less than 28 grams of crack. *See* 21 U.S.C. § 841(b)(1)(C) (2010). But we recently held that retroactive application of the FSA is barred by the general federal savings statute, 1 U.S.C. § 109: "The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide." *See United States v. Bell*, 624 F.3d 803, 815 (7th Cir. 2010) ("[T]he FSA does not contain so much as a hint that Congress intended it to apply retroactively.") Our sister circuits have reached the same conclusion,[2] and *Bell* governs this case. The FSA does not apply retroactively; Mr. Smith's mandatory minimum sentence of 120 months for crack distribution was lawful.

Finally, Mr. Smith argues that his mandatory minimum sentence of 120 months on the drug count is grossly disproportionate to the crime of distributing 10.9 grams of crack and thus constitutes cruel and unusual punishment in violation of the Eighth Amendment. Although we rejected an Eighth Amendment challenge to the mandatory sentences for crack in 1994, *United States v. Smith*, 34 F.3d 514, 525 (7th Cir. 1994), Mr. Smith contends that we should change course because the enactment of the FSA shows that society's "standards of

---

[2] See *United States v. Lewis*, 625 F.3d 1224, 1228 (10th Cir. 2010); *United States v. Brewer*, 624 F.3d 900, 909 n.7 (8th Cir. 2010); *United States v. Gomes*, 621 F.3d 1343, 1346 (11th Cir. 2010); *United States v. Carradine*, 621 F.3d 575, 580 (6th Cir. 2010).

decency" have evolved such that his mandatory sentence imposed under the old statutory scheme is cruel and unusual. But the Eighth Amendment does not require that the crime and sentence be strictly proportional; rather it "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991). Mr. Smith's 120-month sentence was not grossly disproportionate because it was within his guidelines range of 110-137 months and the district court did not abuse its discretion in sentencing him to the then-binding statutory minimum. *See United States v. Olson*, 450 F.3d 655, 686 (7th Cir. 2006).

For the foregoing reasons, we AFFIRM.