MAY, Judge,
dissenting.
Unlike my colleagues, I would hold the search of Watkins’ residence was reasonable under the totality of the circumstances. I therefore respectfully dissent.
*1103 I believe the majority’s analysis underestimates “the extent of law enforcement needs.” Powell v. State, 898 N.E.2d 328, 336 (Ind.Ct.App.2008), trans. denied. The confidential informant, whose credibility had been established, reported meeting Watkins at the house to be searched less than twenty-four hours before the search was to be conducted and, at that time, Watkins was in possession of a handgun. Police believed three men and a woman would be in the house.[5] Detective Gray recalled that Watkins had a criminal history that included a violent crime and he remembered considering that information as the SWAT team decided how to enter the residence.[6] Detective Goergen testified “the fact that there was a firearm on Mr. Watkins didn’t necessarily in my opinion enhance probable cause for the search warrant but it was a, it’s a safety issue for the investigators.” (Tr. Vol.- 2 at 37.) Because the police were executing a search warrant on the home of a convicted violent felon believed to be in possession of a handgun and a large amount of illegal drugs, I would conclude the law enforcement need was high.
In light of the manner in which the search warrant was executed, I conclude the degree of intrusion into Watkins’ privacy was high, but not “unreasonably” *1104 so. Cf. Op. at 1102, ¶ 33 (“the degree of intrusion was unreasonably high”).. Police had already obtained a search warrant, which allowed them- to enter Watkins’ home, breaking down the door - if necessary, and search in any spot that might conceal drugs. Thus, regardless of the precise manner of execution, police had been given authority to intrude into Watkins’ personal residence, drag him outside in handcuffs, and turn his residence upside down.
Furthermore, while I expect the police would never knowingly detonate a flash bang near a child,[7]1 do note that the principal function of a flash bang is “to protect officers from weapons fire,” United States v. Jones, 214 F.3d 836, 838 (7th Cir.2000), and that our Section 11 analysis of reasonableness should “include consideration of police officer safety.” Mitchell v. State, 745 N.E.2d 775, 786 (Ind.2001). As the Mitchell court noted:
In construing and applying “unreasonable” under Section 11, we recognize that Indiana citizens have been concerned not only with personal privacy but also with safety, security, and protection from crime. Indeed, the Indiana Constitution was adopted to the end that “justice be established, public order maintained, and liberty - perpetuated.” Ind. Const, preamble. Its framers and ratifiers declared in Article 1 of its Bill of Rights that government is “instituted for [the people’s] peace, safety, and well-being.” Ind. Const, art. 1, § 1.
Id, (modifications in original). If we are going to ask police officers, as protectors of the general public’s safety and security, to enter the home of four adults, one of whom is a violent felon in possession of a handgun who sells drugs out of the house, I believe we must allow those officers some means by which to protect themselves from the danger that can be inherent in such an entrance.
There certainly could be cases in which the use of a flash bang device may render a search constitutionally unreasonable. But this is not such a case. My analysis of -the Litchfield factors leads mé to conclude the search of Watkins’ house was reasonable under the totality of the circumstances. Accordingly, I see no error in admitting the evidence gathered pursuant to the search warrant in Watkins’ criminal trial, and I respectfully dissent.

. The majority suggests police should have served the search warrant on "the person matching Watkins’ description ... during the time that he was outside of the residence.” Op. at 1102, ¶ 32. However, the record does not indicate: (1) how many officers were near the residence conducting surveillance when the man who looked like Watkins exited the back of the house; or (2) whether those officers possessed a copy of the search warrant to serve. I simply do not believe we should expect what may have been only one or two police officers to serve a search warrant on a man outside a house thought to have three additional adult occupants, at least one gun, and large quantities of drugs that could be destroyed while the premises are being secured.

. I also disagree with my colleagues’ assessment of the evidence about Watkins' criminal history. When asked about Watkins’ criminal history, Detective Gray said, "I think there was some sort of drug history and a violent act but I can’t say for sure.” (Tr. at 51.) When asked again on cross-examination, Detective Gray said, "I’m fairly certain it’s documented,” (id. at 62), and defense counsel responded, “It is.” (Id.) Thus, the question is not "whether” Watkins has a criminal record, only "which crimes” his record contains.
The charging information alleged Watkins was guilty of possession of a firearm by a serious violent felon because he had a conviction of "Burglary Resulting in Bodily Injury in Cause Number 82D02-0403-FA-200.” (App. Vol. 1 at 20.) The trial court had granted Watkins’ motion to sever that count from the other charges for trial, (id. at 7), and had refused to lower Watkins’ bond after a hearing in which Watkins’ counsel asked him if he was serving probation or parole for the "prior conviction of burglary in 2014," (id. at 5), and Watkins replied, "It was 2004.” (Id.) The State's memorandum in opposition to the motion to suppress noted:
At the time the warránt was executed, officers knew that the Defendant had a prior conviction for Burglary as a B felony, which makes the Defendant a serious violent felon. Officers also knew that one of their most credible and reliable informants had seen the Defendant inside the residence with the firearm the evening prior to making entry. The Defendant's possession of a firearm with his status as a serious violent felon is a crime in and of itself and presents an alarming danger to officers' safety.
(Id. at 36.) While none of this information is evidence that proves Watkins had a criminal record that included a violent crime, it demonstrates the officers conducting the search had reason to believe Watkins had been convicted of a violent felony as they were determining how to execute the search warrant. Finally, if the trial court doubted the existence of Watkins' Class B felony burglary conviction under Cause Number 82D02-0403-FA-200, it could have taken judicial notice of that fact, just as we may. See Ind. Evidence Rule 201; (App. Vol. 2 at 189 (PSI demonstrates Watkins pled guilty to Class B felony burglary resulting in bodily injury in 2004).)

. As the Seventh Circuit has noted, “potentially serious injuries ... may arise from the use of a flash-bang device during a search.” United States v. Folks, 236 F.3d 384, 388 (7th Cir.2001) (citing cases involving injuries), cert. denied 534 U.S. 830, 122 S.Ct. 74, 151 L.Ed.2d 39 (2001). “Children are especially vulnerable” to injury if they are near the detonation location. United States v. Jones, 214 F.3d 836, 838 (7th Cir.2000) (refusing to suppress evidence in criminal trial based on inevitable discovery doctrine). Detonation of ' flash bang grenades near innocent people has led to tort claims against the government. See, e.g., Milan v. Bolin, 795 F.3d 726 (7th Cir.2015) (police officers are not shielded from liability by qualified immunity when their execution of a search warrant was unreasonable), cert. denied — U.S. —, 136 S.Ct. 1162, 194 L.Ed.2d 175 (2016).