**Darryl MORRIS, Petitioner,**

v.

**UNITED STATES of American, Respondent.**

**No. 04–3096.**

United States District Court, C.D. Illinois, Springfield Division.

Sept. 1, 2004.

Darryl Morris, Beaver, WV, pro se, for Petitioner.

Gregory M. Gilmore, Assistant U.S. Attorney, Springfield, IL, for Respondent.

## ORDER

SCOTT, District Judge.

This cause is before the Court on Petitioner Darryl Morris' (Morris) Petition under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (d/e 1) (Petition), Supplemental Motion Under 28 U.S.C. § 2255 (d/e 13) (Supplemental Motion), and Motion for Expedited Appeal (d/e 10) (Motion to Expedite). Morris has also filed a Petitioner's Traverse Reply to Government (d/e 12) (Reply).

Morris' Motion to Expedite is denied as moot. As to Morris' Reply, the Court notes that a reply to the Government's Response to Petitioner's Motion Under 28 U.S.C. § 2255 (d/e 7) is not required. *See Rules Governing § 2255 Proceedings,* Rule 5, Advisory Committee Note ("As under Rule 5 of the § 2254 rules, there is no intention here that such a traverse be required, except under special circumstances."). However, it is also not barred. Accordingly, the Court considers Morris' Reply in its evaluation of Morris' Petition and Supplemental Motion. For the reasons set forth below, Morris' Petition and Supplemental Motion are DENIED.

## PROCEDURAL HISTORY

On October 3, 2001, Morris was indicted for possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). Assistant United States Public Defender David Mote was appointed to represent Morris. On November 20, 2001, Morris filed a motion to suppress evidence, arguing that evidence seized during a January 9, 2001, search of his residence authorized by a search warrant should be suppressed due to the unreasonable manner in which it was carried out, including the use of flashbang devices. This Court denied Morris' motion to suppress on November 29, 2001, and set the case for final pretrial hearing on January 4, 2002.

Morris jumped bond and did not appear for his January 4, 2002, final pretrial hearing. A warrant was issued for Morris' arrest, but he was not apprehended until July 15, 2002, when he voluntarily surrendered. Attorney Mote withdrew as counsel on August 16, 2002, and Attorney John Maurer was retained by Morris. On October 3, 2002, Attorney Maurer withdrew as counsel, and on October 23, 2002, Attorney Jon Gray Noll was retained by Morris. On December 9, 2002, Attorney John Madonia also entered his appearance on Morris' behalf.

Morris was tried by a jury in December 2002, and he testified in his own defense. On December 10, 2002, Morris was found guilty of one count of being a felon in possession, pursuant to 18 U.S.C. § 922(g)(1). On April 11, 2003, this Court sentenced Morris to 57 months imprisonment, which reflected enhancements merit-

ed by the Court's findings that: (1) the firearms involved in the offense were stolen, and one did not have a visible serial number; (2) Morris possessed the firearms in connection with another felony offense, namely distribution of marijuana; and (3) Morris willfully obstructed and impeded the administration of justice both by failing to appear at his pretrial conference on January 4, 2002, and by committing perjury at trial by testifying falsely. *Case No. 01–CR–30101, April 15, 2003, Order (d/e 40).*

On appeal, this Court's ruling was affirmed by the Seventh Circuit Court of Appeals on November 19, 2003. *See United States v. Morris,* 349 F.3d 1009 (7th Cir.2003). Morris was represented during the direct appeal of his criminal sentence by Attorneys Noll and Madonia.

Morris timely filed his Petition on April 30, 2004, and now asks this Court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on the grounds that he received ineffective assistance of counsel in violation of his Sixth Amendment rights.[1] Morris argues that Attorney Mote, his counsel at the time of the hearing on his motion to suppress evidence, provided ineffective assistance by not challenging whether probable cause existed to support the search warrant that led to the discovery of firearms at Morris' residence. Next, Morris contends that Attorneys Noll and Madonia provided ineffective assistance by failing to tell him about the possible benefits of pleading guilty, and by impeaching the credibility of a defense witness, Andre Snow, during Morris' trial. Finally, Morris contends in

his Supplemental Motion that, under *Blakely v. Washington,* his sentence is unconstitutional because it reflected enhancements based on findings by this Court, made under a preponderance of the evidence standard. *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

## ANALYSIS

### I. INEFFECTIVE ASSISTANCE OF COUNSEL

To prevail on his claim of ineffective assistance of counsel, Morris must show that: (1) his attorney's performance was objectively unreasonable, and (2) such performance prejudiced him. *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Court evaluates "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690, 104 S.Ct. 2052. In addition, this Court's review of counsel's performance is "highly deferential." *Id.* at 689, 104 S.Ct. 2052. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.,* quoting *Michel v. State of Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955).

Morris must also demonstrate that his counsel's ineffective assistance prejudiced him in some way. He can do so by

---

1. The Sixth Amendment states:

   In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be

   informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and *to have the Assistance of Counsel for his defense.*

   *U.S. Const.* amend. VI (emphasis added).

"show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. When conducting this prejudice determination, the Court "focuses on the question whether counsel's deficient performance renders the result of trial unreliable or the proceeding fundamentally unfair. Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) (internal citations omitted). Further, this Court need not consider "the effect of an objection it knows to be wholly meritless under current governing law, even if the objection might have been considered meritorious at the time of its omission." *Id.* at 374, 113 S.Ct. 838 (O'Connor, J., concurring).

Although the Supreme Court in *Strickland* discussed the two prongs of an ineffective assistance of counsel claim in sequential order, it noted that:

> a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Strickland*, 466 U.S. at 697, 104 S.Ct. 2052. In the case at bar, Morris has failed to demonstrate prejudice. Accordingly, the Court is not required to "grade counsel's performance" by evaluating the reasonableness of Attorneys Mote, Madonia, and Noll's actions. Morris' Petition fails because he cannot show that he has been prejudiced in any way.

### A. FAILURE TO CONTEST ISSUANCE OF SEARCH WARRANT DID NOT CAUSE PREJUDICE

■ The sole issue before the Court is whether Morris was prejudiced under *Strickland* by his counsel's failure to challenge the search warrant, not on whether there was in fact a violation of the Fourth Amendment when the search warrant was issued. Morris' Petition is barred to the extent that it attempts to vacate, set aside, or correct his sentence on the basis that his Fourth Amendment rights were violated by the issuance of the search warrant for his residence. The United States Supreme Court has held "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (footnotes omitted); *see also United States v. Jones*, 152 F.3d 680, 688 (7th Cir.1998) (applying *Stone's* holding to federal prisoners).

To the extent that Morris' Petition claims he suffered from ineffective assistance of counsel under the Sixth Amendment, however, "a narrow walkway might permit him to raise Fourth Amendment issues through the back door via a Sixth Amendment claim that his attorney's handling of the issue ... was incompetent." *Holman v. Page*, 95 F.3d 481, 489 (7th Cir.1996), *citing Kimmelman v. Morrison*, 477 U.S. 365, 382–83, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). The Seventh Circuit has explained:

> [t]he focus of the inquiry is not whether the Fourth Amendment issue was properly decided, which on habeas review

*Stone* precludes, but whether defendant was denied his Sixth Amendment right to competent counsel. Thus, the "claim must be judged as a Sixth Amendment claim, according to the standards set forth in [*Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052], and not as a Fourth Amendment claim governed by *Stone.*" *Morrison,* 477 U.S. at 393, 106 S.Ct. at 2592 (Powell, J., concurring). *Id.* Accordingly, the Court evaluates Morris' claim regarding the search warrant under the Sixth Amendment.

To evaluate Morris' claim under the Sixth Amendment using the *Strickland* standard, the Court uses a different analysis than it would use if it was evaluating Morris' claim under the Fourth Amendment. As defined, "[p]rejudice in the *Strickland* sense refers to 'unprofessional errors' so egregious 'that the trial was rendered unfair and the verdict rendered suspect.'" *Id.* at 491, *quoting Morrison,* 477 U.S. at 374, 106 S.Ct. 2574. The Seventh Circuit has explained:

> *Strickland* prejudice relates to the fairness of the proceedings and to the confidence one may place in the outcome, i.e., to the correctness of the verdict. The Supreme Court has made clear that it is not unfair to a defendant for a jury to consider reliable but improperly gathered evidence of guilt. Fairness to the accused has nothing to do with the purpose of the exclusionary rule, which is why Fourth Amendment claims cannot be raised on habeas review.

*Id., citing Stone,* 428 U.S. at 486, 494–95, 96 S.Ct. 3037.

In this case, the search warrant resulted in discovery of several firearms at Morris' residence, one of which held Morris' palm print on the bottom of the gun. These weapons were introduced as evidence against Morris at trial. *See Government's Response to Petitioner's Motion Under 28 U.S.C. § 2255 (d/e 7)* (Response), *Affidavit of Jon Gray Noll,* Exh. 2, pg. 253–54.

■ Significantly, Morris does not contest that the admission of this evidence against him made the guilty verdict less reliable than if the evidence had not been present. Instead, his sole argument is that his counsel's "failure to challenge the search warrant resulted in the defendant being prejudiced, in that all of the illegally obtained evidence being admitted as evidence in the defendan[t]'s tr[ia]l." *Memorandum of Law In Support of Defendant's § 2255 Motion* (Petitioner's Memorandum), pg. 6. Even if the Court assumes that the search warrant was issued wrongly, admission of improperly-gathered evidence alone does not constitute "prejudice" under *Strickland. Holman,* 95 F.3d at 491. In his Petition, Morris makes no showing that the admission at trial of evidence gathered pursuant to the search warrant made his guilty verdict less reliable. *Id.* at 492. In fact, the weapon with his palm print was very probative evidence to show that Morris had possessed the weapon at some time. Therefore, Morris' claim of ineffective assistance of counsel based on his counsel's failure to challenge the issuance of the search warrant is denied.

Even assuming, *arguendo,* that this Court should reach the merits of Morris' Fourth Amendment claims, this Court still finds no grounds to vacate, set aside, or correct his sentence.[2] Morris argues that the search warrant was improvidently granted because it was not supported by probable cause. *Petitioner's Memorandum,* pg. 3. He argues that it was fatally flawed because there was no way to gauge

---

**2.** The Fourth Amendment states, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

the reliability of the anonymous tips that supported it, and the evidence found in his waste bin was obtained in violation of his Fourth Amendment rights. *Id.*

The search warrant was supported by Officer Edwards' Affidavit; in it he attested to several types of evidence that suggested that Morris was selling drugs from his residence, including: (1) a concerned citizen's report that a black male was selling crack cocaine at Morris' residence [1225 E. Ash St.] and that a large volume of foot and vehicle traffic was coming or going at all times of the day and night; (2) a Crime Stopper tip on December 4, 2000, that a Hispanic male driving a white Mercedes with New York license plates was selling drugs from Morris' residence; (3) evidence taken by police from Morris' garbage bin on both January 7 and 8, 2001, including traces of cocaine and marijuana and an unspent .22 caliber rifle round; and (4) observations by Officer Edwards that traffic patterns at Morris' residence were consistent with drug activity. *Id., Affidavit of Officer Donald L. Edwards.*

■ The Court begins with the constitutionality of the officers' search of Morris' waste bins. Morris argues that he "had an expectation of privacy that his garbage would remain free from Government intrusion within the curtilage of his property." *Id.* at 3. Morris alleges that he secured his trash within the curtilage of his property, but he does not allege specific facts in support of this legal conclusion. Further, Morris does not dispute Officer Edwards' description of the location where the trash was found, namely, "... [in] white plastic garbage bags inside and protruding from trashcans that were directly behind 1225 E. Ash and on the alley side of the chain link fence." *Id., Edwards Aff.*

In *United States v. Shanks,* the Seventh Circuit held that where:

garbage is readily accessible from the street or other public thoroughfares, an

expectation of privacy may be objectively unreasonable because of the common practice of scavengers, snoops, and other members of the public in sorting through garbage. Because the garbage cans in this case were readily accessible and visible from a public thoroughfare, the alley, and because it is common for scavengers to snoop through garbage cans found in such alleys, we agree that Shanks could harbor no reasonable expectation of privacy since the garbage was essentially exposed to the public.

*U.S. v. Shanks,* 97 F.3d 977, 980 (7th Cir. 1996) (internal citations omitted). As in *Shanks,* Morris placed his trash in waste bins adjacent to a public thoroughfare—an alley. Therefore, he could not have a reasonable expectation of privacy in his trash, and the officers' search would have been found constitutional, had it been challenged by Attorney Mote.

■ Next, the Court turns to determine the reliability of the confidential sources described in Officer Edwards' Affidavit. To evaluate such sources, this Court looks to the following factors, including:

... the personal observations of the confidential informant ("CI"), the degree of detail given in the affidavit, independent police corroboration of the information, the interval of time between the events and application for a warrant, and whether the informant testified at the probable cause hearing. None of these factors is determinative; however, "a deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability."

*United States v. Peck,* 317 F.3d 754, 756 (7th Cir.2003), *quoting United States v. Brack,* 188 F.3d 748, 756 (7th Cir.1999). Both tips suggested firsthand accounts, included significant detail, and were corrob-

orated by the officers' independent investigations (including searches of Morris' garbage bins and observations of traffic patterns outside his home). Probable cause is "established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *Id., citing Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The anonymous tips and the officers' independent investigations which corroborated them support the Magistrate Judge's finding that probable cause existed for the issuance of the search warrant.

Finally, Morris does not allege that the Magistrate Judge who issued the search warrant "abandoned his detached and neutral role." *United States v. Leon*, 468 U.S. 897, 926, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Accordingly, unless Morris alleged facts showing that the "officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause," then evidence seized during the execution of the search warrant would not be suppressed due to the good faith exception to the exclusionary rule. *Id.*

▇ Morris suggests, "[t]here was no way to determine the reliability or honesty of the anonymous tipster to support issuance of the warrant. It is highly likely that the alleged anonymous tipsters are a figment of [Officer Edwards'] imagination." *Petitioner's Memorandum*, pg. 3. This inference of untruthfulness is unjustified due to the corroboration noted above. Accordingly, the good faith exception to the exclusionary rule would also have operated to support the introduction of evidence seized during the execution of the search warrant. Therefore, Morris' Fourth Amendment claims also fail, even assuming, *arguendo*, that the Court should have reached their merits.

## B. MORRIS' DECISION TO ADVANCE TO TRIAL

▇ Morris argues that Attorneys Noll and Madonia led him into proceeding to trial in "a successful attempt to receive more money for additional services." *Id.* at 8. To that end, Morris contends that Attorneys Noll and Madonia "never adequately discussed the advisability of pleading guilty." *Id.* at 12. As evidence of these claims, Morris offers his own Affidavit, attesting to the following facts:

1. He would have entered a guilty plea, but for Attorney Noll's advice.

2. Attorney Noll told him that he would receive the same sentence whether he proceeded to trial or pled guilty.

3. Attorney Noll did not advise him that he could received a three-point reduction for pleading guilty and accepting responsibility.

*Id., Affidavit of Darryl Morris.* Morris alleges that Attorney Noll and Madonia's conduct injured him because he otherwise would have pled guilty pursuant to a "potential plea agreement . . . in exchange for a 3 level departure," with the "substantial likelyhood [sic] that he would have received a downward departure under section 5K1.1 . . ." *Id.* at 9, 10.

In direct contravention to Morris' allegations, the Government presents the Affidavits of Attorneys Noll and Madonia, as well as letters written by Attorney Noll to Morris on October 22, 2002 and November 18, 2002, respectively.[3] Attorney Noll at-

---

**3.** Attorney Madonia signed an identical copy of the Affidavit offered by Attorney Noll. *Compare Government's Response, Affidavit of Jon Gray Noll, with Affidavit of John (Mo) Madonia.*

tests that he raised the possibility of cooperating with the Government to Morris, but Morris' decision to proceed to trial and testify on his own behalf "was so tenacious and resolute that his only focus was vindication at trial." *Government's Response, Affidavit of Jon Gray Noll,* pg. 4. Attorney Noll's letter of October 22, 2002, explained to Morris that the decision to plead guilty or not guilty was Morris' alone. *Id.,* Exh. 1, pg. 2. Further, Attorney Noll's letter of November 18, 2002, notified Morris that the possibility of a three-point reduction for acceptance of responsibility was tied to the decision to plead guilty. *Id.,* Exh. 3, pg. 2. In addition, Attorney Noll disputes Morris' claim that Morris would have received a three-point reduction for acceptance of responsibility, noting that "[a]ny credit [Morris] might have been entitled to under acceptance of responsibility was essentially waived" due to his failure to appear for his pretrial hearing on January 4, 2002. *Id.,* pg. 5.

To establish prejudice resulting from ineffective assistance of counsel during plea negotiations, Morris must establish, "(1) through objective evidence that (2) there is a reasonable probability that, but for counsel's inadequate performance, he would have accepted the government's offer." *Paters v. United States,* 159 F.3d 1043, 1047 (7th Cir.1998).

First, Morris has submitted no objective evidence that the Government ever offered him a plea agreement. Second, Attorney

Noll's letters to Morris conclusively demonstrate that Morris was advised that the decision whether to plead guilty or go to trial was Morris' alone, and that any possibility of a three-level reduction for acceptance of responsibility was intimately tied to pleading guilty. *See Government's Response, Affidavit of Jon Gray Noll,* Exhs. 1, 3. For example, Attorney Noll's November 18, 2002, letter flatly contradicts Morris' claim that Attorney Noll wrongly advised him that there was no difference between pleading guilty and advancing to trial. In it, Attorney Noll wrote:

> Assuming that the Court found that you had in some way obstructed justice, 2 points would be added, bringing the offense level to 21. However, in the event of a plea of guilty which is made *prior to the Government making substantial trial preparations,* you would be given a 3–point downward adjustment, leaving you with a base of 18.

*Id.,* Exh. 3, pg. 2 (emphasis added). The implication that a reduction for acceptance of responsibility would only be possible *prior to* the Government making substantial trial preparations and that such a reduction would not be forthcoming *after* substantial trial preparations had been made is unmistakable.[4] Accordingly, Morris' claim that Attorneys Noll and Madonia did not advise him of the possibility of a three-level reduction for acceptance of responsibility cannot be sustained. No hearing on this issue is warranted because the

4. The Court notes that the state of the law as of November 2002, when Attorney Noll wrote the letter, made it very unlikely that Morris would be entitled to a three-level reduction for acceptance of responsibility, even if Morris pled guilty. By jumping bond and substantially delaying his trial, Morris had already obstructed justice under the Sentencing Guidelines and Seventh Circuit precedent. *See United States Sentencing Guidelines* (U.S.S.G.) § 3C1.1, and Commentary Note 4(e) ("... willfully failing to appear, as or-

dered, for a judicial proceeding.") (Nov. 1, 2002); *United States v. Bolden,* 279 F.3d 498, 502 (7th Cir.2002) (decided January 31, 2002). Accordingly, unless Morris's case was one of the "extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply", he would not be entitled to a reduction for acceptance of responsibility. *U.S.S.G.* § 3E1.1, Commentary Note 4 (November 1, 2002). Morris presents no evidence to suggest that his case was extraordinary in this way.

Court finds conclusive evidence that Morris was so informed but chose to advance to trial anyway. *McCleese v. United States*, 75 F.3d 1174, 1182 (7th Cir.1996).

### C. *TESTIMONY AND EXAMINATION OF ANDRE SNOW*

Testimony at Morris' trial revealed inconsistency between the statements of defense witness, Andre Snow, and prosecution witness, Alcohol, Tobacco, and Firearms (ATF) Special Agent Tom Dart. First, Snow testified that he had not based his refusal to speak without an attorney present to Special Agent Tom Dart on November 21, 2003, on the advice of Attorney Noll. *Petitioner's Memorandum*, Trial Transcript, pg. 244. Instead, Snow testified under the Government's questioning:

Q. "You didn't tell [Special Agent Dart] that Jon Noll told you not to talk to him?"

A. "I didn't name anybody specific, I just said I wouldn't speak to him unless an attorney was present."

*Id.*

On cross-examination by Attorney Noll on the same issue, Snow testified that he spoke with Attorney Noll for the first time just two days before his testimony at trial. *Id.* When called to testify, however, Special Agent Dart stated that Snow, "told me that he did not want to talk to me on the advice of his attorney. I asked him did Jon Noll tell you that you shouldn't talk to me. And he nodded, he said yes and nodded just like that." *Id.*, pg. 271.

Morris argues that Attorney Noll's cross-examination of Snow, contrasted with the subsequent testimony of Special Agent Dart, painted Snow as liar. Morris contends that Attorney Noll's "questioning reflected negatively on the witness [Snow], who was a *defense* witness. This clearly was against the interests of his client, as it undermined the the [sic] testimony that the witness had just proffered." *Petition-*

*er's Memorandum*, pg. 7 (emphasis in the original). In the alternative, Morris also claims ineffective assistance of counsel if Attorney Noll really did speak with Snow for the first time just a few days before Snow's testimony in Morris' case, claiming lack of preparation on Attorney Noll's part. *Id.* at 8.

Under *Strickland*, Morris must show Attorney Noll's cross-examination was an error "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. The standard the Court applies to Attorney Noll and Madonia's conduct is "that of reasonably effective assistance." *Id.*

■ Morris cannot show that Attorney Noll acted unreasonably. First, Attorney Noll's cross-examination did nothing but bolster the veracity of Snow's testimony. Attorneys are barred by the Illinois Rules of Professional Conduct from "participat[ing] in the creation or preservation of evidence when the lawyer knows or reasonably should know the evidence is false." *Illinois Supreme Court Rules*, Art. VIII, *Illinois Rules of Professional Conduct*, § 3.3(a)(5), *available at* http://www.state.il.us/court/SupremeCourt/Rules/Art—VIII/ArtVIII.htm# 3.3. Accordingly, by asking Snow the leading question, "Today is Tuesday, and you and I had never spoken before Sunday, is that correct?", Attorney Noll was adding his own credibility to Snow's statements on direct examination. *Petitioner's Memorandum*, Trial Transcript, pg. 244. Attorney Noll was under a professional obligation not to lead Snow into a lie. If Attorney Noll had stayed silent, the jury would have been left to make its own conclusions as to who was telling the truth at trial about what Snow did or did not say

to Special Agent Dart. After Attorney Noll cross-examined Snow, however, the jury had another reason to believe that Snow was telling the truth at trial.

Second, this Court's evaluation of Attorney Noll's actions is highly deferential. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. Because the Court can deduce a logical reason behind Attorney Noll's cross-examination of Snow, Morris' claim of ineffective assistance of counsel cannot succeed.

Morris' argument in the alternative—that it was ineffective assistance for Attorney Noll not to interview Snow until two days before trial—is also unfounded. Witness preparation was within the discretion of Attorney Noll. Further, Morris has alleged no grounds regarding how Attorney Noll's supposed lack of preparation prejudiced him at trial. Therefore, Morris' claims of ineffective assistance of counsel based on the cross-examination of Snow are dismissed.

## II. *BLAKELY AND THE SIXTH AMENDMENT*

■ On July 28, 2004, the Court allowed Morris' Motion For Permission to Supplement Motion Under § 2255 (d/e 11), and directed the Clerk of the Court to file Morris' Supplemental Motion Under 28 U.S.C. § 2255 (d/e 13) (Supplemental Motion). In his Supplemental Motion, Morris argues that the Supreme Court's recent decision in *Blakely v. Washington* should be applied retroactively to his sentence. *Blakely,* — U.S. —, 124 S.Ct. 2531, 159 L.Ed.2d 403. He contends that under *Blakely,* his sentence is constitutionally invalid because he received several enhancements at sentencing that were found by a preponderance of the evidence by the Court, not by his own admission, or beyond a reasonable doubt by a jury. In *Booker,* the Seventh Circuit held that *Blakely* applies to the United States Sentencing Guidelines and that a defendant

has a Sixth Amendment right to have a jury decide, beyond a reasonable doubt, any fact that might increase his or her sentence. *United States v. Booker,* 375 F.3d 508 (7th Cir.2004); *see also United States v. Ward,* 377 F.3d 671 (7th Cir. 2004). Therefore, the question before the Court is whether *Blakely's* holding can be retroactively applied to Morris' case on collateral review. For the reasons set forth below, the Court finds that the new rule of criminal procedure announced in *Blakely* cannot be applied retroactively to Morris' case.

On the same day that it issued *Blakely,* the Supreme Court also issued *Beard* and *Schriro,* both of which reiterated the law on the retroactive application of new rules of criminal procedure on cases brought on collateral review. *Beard v. Banks,* — U.S.—, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004); *Schriro v. Summerlin,* — U.S. —, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004). In *Beard,* the Court explained that courts should follow a three-step process to determine retroactivity:

> Under [*Teague v. Lane,* 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion) ], the determination whether a constitutional rule of criminal procedure applies to a case on collateral review involves a three-step process. First, the court must determine when the defendant's conviction became final. Second, it must ascertain the legal landscape as it then existed, and ask whether the Constitution, as interpreted by the precedent then existing, compels the rule. That is, the court must decide whether the rule is actually new. Finally, if the rule is new, the court must consider whether it falls within either of the two exceptions to nonretroactivity.

*Beard,* —— U.S. at ——, 124 S.Ct. at 2510 (internal citations and quotations omitted).

It is undisputed that Morris' conviction became final before the Supreme Court's decision in *Blakely* was issued.[5] Accordingly, the Court's next step is to determine whether *Blakely* announced a new rule of criminal procedure. Viewing the legal landscape as it existed on February 19, 2004, the Court "ask[s] whether the Constitution, as interpreted by the precedent then existing, compels the [new] rule." *Id.* In other words, was the rule announced in *Blakely* "dictated by then-existing precedent ... [and] apparent to all reasonable jurists.'" *Id.* at 2511 (emphasis in the original), *quoting Lambrix v. Singletary,* 520 U.S. 518, 527–28, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997).

*Blakely* extended the Court's earlier holding in *Apprendi* which had concluded that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In modifying *Apprendi, Blakely* held that:

the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.

*Blakely,* 124 S.Ct at 2537 (emphasis in the original, internal citations omitted).

This interpretation of the term "statutory maximum" for *Apprendi* purposes announced a new rule of criminal procedure that was neither compelled by existing precedent nor apparent to all reasonable jurists. First, while *Blakely's* holding interpreted *Apprendi,* it was not compelled by *Apprendi.* As the Government points out, at the time *Blakely* was issued, the Courts of Appeal were unanimous that *Apprendi* did not apply to sentencing enhancements under the United States Sentencing Guidelines so long as they did not result in a sentence beyond the statutory maximum.[6] *Government's Response to Petitioner's Supplemental Motion Under 28 U.S.C. § 2255 (d/e 14),* pg. 5 n. 2. Second, the simple fact that four Justices dissented from the *Blakely* majority makes clear that its holding was not apparent to all reasonable jurists.[7] *See*

---

**5.** Morris' conviction became final after his time to file a petition for certiorari expired on February 19, 2004, 90 days after the Seventh Circuit Court of Appeals entered judgment in *Morris* (affirming Morris' sentence on November 19, 2003). *Morris,* 349 F.3d 1009; *see United States Supreme Court Rule* 13.1.

**6.** *See, e.g., United States v. Casas,* 356 F.3d 104, 128 (1st Cir.2004); *United States v. Luciano,* 311 F.3d 146, 153 (2d Cir.2002); *United States v. Parmelee,* 319 F.3d 583, 591–92 (3d Cir.2003); *United States v. Cannady,* 283 F.3d 641, 647 & n. 7 (4th Cir.2002); *United States v. Floyd,* 343 F.3d 363, 372 (5th Cir.2003); *United States v. Tarwater,* 308 F.3d 494, 517 (6th Cir.2002); *United States v. Merritt,* 361 F.3d 1005, 1015 (7th Cir.2004); *United States*

*v. Banks,* 340 F.3d 683, 684–85 (8th Cir. 2003); *United States v. Ochoa,* 311 F.3d 1133, 1134–36 (9th Cir.2002); *United States v. Mendez–Zamora,* 296 F.3d 1013, 1020 (10th Cir. 2002); *United States v. Ortiz,* 318 F.3d 1030, 1039 (11th Cir.2003); *United States v. Pettigrew,* 346 F.3d 1139, 1147 n. 18 (D.C.Cir. 2003).

**7.** Justice Scalia, who wrote the majority opinion, was joined by Ginsburg, Souter, Stevens, and Thomas, JJ. Justice O'Connor filed a dissenting opinion, joined by Breyer, J., and joined in part by Rehnquist, C.J., and Kennedy, J.; Justice Kennedy filed a dissenting opinion, joined by Breyer, J.; and Justice Breyer filed a dissenting opinion, joined by O'Connor, J. *Blakely,* 124 S.Ct. 2531.

*Beard,* 124 S.Ct. at 2512 (noting that the fact that four Justices dissented in *Mills* was sufficient to show that the new rule announced in *Mills* was not apparent to all reasonable jurists. *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988)). Finally, the Seventh Circuit has concluded, albeit in dictum, that the "rule announced in *Blakely* is based in the Constitution and was not dictated or compelled by *Apprendi* or its progeny." *Simpson v. United States,* 376 F.3d 679, 681 (7th Cir.2004). Therefore, the Court concludes that *Blakely* announced a new rule of criminal procedure.

The final step of the *Teague* retroactivity analysis requires the Court to determine whether *Blakely's* new rule falls within one of the two narrow exceptions to *Teague's* general bar on the retroactive application of new rules of criminal procedure. Only the second exception, which allows retroactivity for " 'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding," could possibly be applicable to Morris' Petition. *Graham v. Collins,* 506 U.S. 461, 478, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993).[8]

Watershed rules of criminal procedure susceptible to retroactive application on collateral attack, however, are extremely rare. In *Beard,* the Court noted:

> We have repeatedly emphasized the limited scope of the second *Teague* exception, explaining that it is clearly meant to apply only to a small core of rules requiring observance of those procedures that ... are implicit in the concept of ordered liberty. And, because any qualifying rule would be so central to an accurate determination of innocence or guilt [that it is] unlikely that many such components of basic due process have yet to emerge, it should come as no surprise that we have yet to find a new rule that falls under the second *Teague* exception.

*Beard,* 124 S.Ct. at 2513–14 (internal quotations and citations omitted). Further, in *Schriro* the Court stated, "[t]hat a new procedural rule is fundamental in some abstract sense is not enough; the rule must be one without which the likelihood of an accurate conviction is *seriously* diminished. This class of rules is extremely narrow, and it is unlikely that any ... ha[s] yet to emerge." *Schriro,* 124 S.Ct. at 2523 (internal quotations and citations omitted) (emphasis in the original).[9]

*Schriro* instructs on the limited breadth of the second *Teague* exception and its reasoning directly applies to Morris' Petition. In *Schriro,* the Court considered whether the new procedural rule announced in *Ring* could be applied retroactively. *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). In *Ring,* the Court had applied *Apprendi* to find an Arizona law unconstitutional because it placed the power to find any one of ten aggravating factors necessary to

**8.** The first exception allows retroactive application of "rules forbidding punishment 'of certain primary conduct ... [as well as] rules prohibiting a certain category of punishment for a class of defendants because of their status or offense'," neither of which are implicated in this case. *Beard,* 124 S.Ct. at 2513, *quoting Penry v. Lynaugh,* 492 U.S. 302, 330, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

**9.** As an example of such a fundamental rule, the *Beard* Court held up the right to counsel established by *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). "*Gideon,* it is fair to say, 'alter[ed] our understanding of the *bedrock procedural elements* essential to the fairness of a proceeding.' *Sawyer v. Smith,* 497 U.S. 227, 242, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990). By contrast, we have not hesitated to hold that less sweeping and fundamental rules do not fall within *Teague's* second exception." *Beard,* 124 S.Ct. at 2514 (emphasis in the original).

trigger the death penalty in the judge's hands, not the jury's. The Court ruled that the Sixth Amendment gave the defendant the right to have a jury find such aggravating factors beyond a reasonable doubt.

To determine whether the new rule announced in *Ring* could be applied retroactively, the *Schriro* Court questioned, "whether judicial factfinding so *seriously* diminishe[s] accuracy that there is an impermissibly large risk of punishing conduct the law does not reach." *Id., Schriro,* 124 S.Ct. at 2525 (internal quotations omitted). Despite the jury's central role in the American criminal system, the Court found that procedural rules affecting the right to a jury were not sufficiently fundamental to the concept of ordered liberty to permit retroactive application of the rule announced in *Ring.* The Court wrote, "[w]hen so many presumably reasonable minds continue to disagree over whether juries are better factfinders *at all,* we cannot confidently say that judicial factfinding *seriously* diminishes accuracy." *Id.* (emphasis in the original). The Court then foreclosed any possibility of applying *Ring's* new procedural rule retroactively by stating:

> The right to jury trial is fundamental to our system of criminal procedure, and States are bound to enforce the Sixth Amendment's guarantees as we interpret them. But it does not follow that, when a criminal defendant has had a full trial and one round of appeals in which the State faithfully applied the Constitution as we understood it at the time, he

may nevertheless continue to litigate his claims indefinitely in hopes that we will one day have a change of heart.

*Id.* at 2526.

Morris' Petition seeks retroactive application of his Sixth Amendment right to have a jury determine beyond a reasonable doubt any fact that increased his sentence. *Schriro* teaches, however, that such a right cannot be applied retroactively because it is not of the type fundamental to the concept of ordered liberty. This conclusion is buttressed by the fact that *Apprendi,* which announced a new rule of criminal procedure of a similar nature to the one announced in *Blakely,* was not applied retroactively by the Seventh Circuit. *See Curtis v. United States,* 294 F.3d 841, 842 (7th Cir.2002), *cert. denied,* 537 U.S. 976, 123 S.Ct. 451, 154 L.Ed.2d 334 (2002). Further, many courts that have been petitioned to apply *Blakely* retroactively on collateral attack have concluded that it cannot be done. *See United States v. Lowe,* 2004 WL 1803354, *3 (N.D.Ill., August 5, 2004); *Garcia v. United States,* 2004 WL 1752588, *6 (N.D.N.Y., August 4, 2004); *United States v. Stoltz,* 325 F.Supp.2d 982, 987 (D.Minn.,2004); *see also In re Dean,* 375 F.3d 1287, 1290 (11th Cir.2004) (strongly suggesting that *Blakely* cannot be applied retroactively in *dicta*); *Rosario–Dominguez v. United States,* 2004 WL 1814021, *9 n. 3 (S.D.N.Y., August 16, 2004); *but see Blakely,* 124 S.Ct. at 2549 (O'Connor, J., dissenting, joined in part by Rehnquist, C.J., and Kennedy, J., and joined by Breyer, J.).[10] Therefore, Morris' Supplemental Motion is denied.

---

**10.** In her dissent, Justice O'Connor implied that despite *Schriro,* sentences like Morris' may be susceptible to retroactive application of *Blakely* on collateral attack.

> And, despite the fact that we hold in *Schriro v. Summerlin, ante,* —— U.S. ——, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004), that *Ring* (and *a fortiori Apprendi*) does not apply retroactively on habeas review, all criminal

sentences imposed under the federal and state guidelines since *Apprendi* was decided in 2000 arguably remain open to collateral attack.

*Blakely,* 124 S.Ct. at 2549 (O'Connor, J., dissenting, joined by Rehnquist, C.J., Kennedy and Breyer, JJ.). This position, however, has not been adopted by the aforecited courts.

*CONCLUSION*

THEREFORE, Petitioner Darryl Morris' Petition under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (d/e 1) and Supplemental Motion Under 28 U.S.C. § 2255 (d/e 13) are DENIED. This case is closed.

IT IS THEREFORE SO ORDERED.